IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROBERT MEREDITH,**

              **Plaintiff,**

      **v.**                                    **CASE NO.  12-3027-SAC**

**RAY ROBERTS, Secretary**
**of Corrections,**
**et al.,**

              **Defendants.**

**MEMORANDUM AND ORDER**

This civil complaint, 42 U.S.C. § 1983, was filed pro se by an inmate of the Winfield Correctional Facility, Winfield, Kansas. Plaintiff has also filed an Application to Proceed Without Prepayment of Fees (Doc. 2), a Motion for Appointment of Counsel (Doc. 3), a Supplement (Doc. 4), and a Motion for Leave to Amend his Complaint (Doc. 5).

**FILING FEE**

The court has considered plaintiff's Motion to Proceed Without Prepayment of Fees and the attached Inmate Account Statement. Under 28 U.S.C. § 1915(b)(1), even if this motion is granted, Mr. Meredith will not be relieved of the obligation to pay the full fee of $350.00 for filing this civil action. Instead, being granted such leave merely entitles him to proceed without prepayment of the full fee, and to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2). Furthermore, § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the

greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit was $15.30, and the average monthly balance was $ 2.47. The court therefore assesses an initial partial filing fee of $ 3.00, twenty percent of the average monthly deposit, rounded to the lower half dollar. Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the assessed fee. His failure to pay this part fee in the time allotted may result in dismissal of this action without further notice.

**COMPLAINT NOT UPON FORMS**

Plaintiff is required by court rule to submit his complaint on a court-approved form. D.Kan.Rule 9.1(a). Forms will be sent to him for that purpose. The failure to comply with this requirement in a timely manner may result in the complaint being dismissed without prejudice and without further notice.

**FACTUAL BACKGROUND AND ALLEGATIONS**

As the factual background for his complaint, Mr. Meredith alleges as follows. On or about November 28, 2011, he received "publications" in the mail from Acme Publication. He was informed in person that he could not have "certain items" that he had received in the mail. He asked why, and was informed by Sgt. Arnett who was employed as A&D Property Supervisor, that some of the publications were in violation of K.A.R. 44-12-313. He told Arnett

2

he was going to file a grievance.  Arnett became angry and stated that he was going to seize all the publications because plaintiff was filing a grievance against him.  Defendant Arnett did not allow plaintiff to receive "publication material" that he had been allowed to receive from the same company for over 4 years.

Plaintiff filed "an appeal against Sgt. Arnett to the Policy and Compliance Manager, Robbie Reynolds, Warden Emily Conover, Secretary of Corrections Ray Roberts," which was denied.  The denial by the Secretary of Corrections (SOC) was dated December 16, 2011, which was the date his appeal was mailed out of the institution.

Plaintiff asserts that his rights under the First, Fourth, and Eight Amendments were violated.  As factual support for Count I, he alleges that defendant Arnett "became deliberate indifferent" when he refused to allow plaintiff to receive all his publications.  He further alleges that "under the Turner standard" defendant Arnett "failed to abide by established procedures and standards" and violated the First Amendment by failing to follow censorship rules due to his personal anger.  Plaintiff alleges that defendant Arnett acted intentionally and maliciously, abused his position, and "singled (plaintiff) out."  As factual support for Count II, he alleges that defendants Conover, Reynolds, and Roberts were supervisors over defendant Arnett and participated directly in the violations because after they were informed of Arnett's actions "thru a report or appeal" they failed to remedy the wrong.  He claims these defendants were grossly negligent in supervising their subordinate Arnett "who commited (sic) the wrongful act."

Plaintiff has attached several exhibits to his complaint.  The second is entitled "WCF Notice of Action/Contraband/Censored Mail"

and dated November 28, 2011.  See Complaint (Doc. 1) Exh. 2.  This exhibit shows that materials sent to Mr. Meredith by Acme Publication and received at the WCF on that date, were subject to "return/destroy" for the reason: Sexually Explicit Material" under K.A.R. 44-12-313.  Mr. Meredith was informed that he had 15 days to protest the decision, and that all "protests shall be forwarded to the Secretary of Corrections or the Secretary's designee for final review and disposition."  Id.  At the bottom of this Notice "Protest denied 12-16-11" is handwritten over an unintelligible signature.

 Plaintiff also exhibits his "Appeal of Mail Censorship" dated December 12, 2011, addressed to the Secretary of Corrections.  See id., Exh. 1.  Therein, he stated as follows.  On November 28, 2011, three photos and one photo catalogue were seized by the WCF mailroom.  The reason for the seizure was "supposedly" K.A.R. 44-12-313 (Sexually Explicit Material).  On December 2, 2011, he received a copy of the mail censor form from the mailroom.  He asked the SOC to review the three photos and whole catalogue to determine if the materials were properly classified under K.A.R. 44-12-313, to overturn the censorship decision, and to order that the property be given to him.

 Plaintiff exhibits his grievances dated December 26 and 27, 2011, and January 9 and 10, 2012, in which he inquired about the decision and the censored materials.  The responses include the already noted handwritten response attached to the grievance dated December 26, 2011.  Plaintiff was also given the alternatives of sending the items out at his expense or their destruction and was informed that the materials would not be held beyond December 30, 2011.  On January 12, 2012, plaintiff was informed that censored

4

material is viewed in its entirety, and that he had not met the deadline to mail the items out so they were discarded. Id., Exhib 4.  Plaintiff exhibits notices from Robbie Reynolds to him dated December 2, 2011, that he had the right to appeal the decision to the SOC and December 5, 2011, advising that he needed to write his appeal and mail it directly to the SOC in Topeka. Id., Exh. 5.  In a notice dated December 16, 2011, Mr. Meredith was notified that his appeal was processed and forwarded. Id.

Plaintiff also attaches to his complaint numerous catalog and magazine photos that he alleges he has been allowed to receive in the prison mail, and claims that they are no different from the ones being censored.

Plaintiff's Supplement is a letter from Douglas W. Burris, Corrections Manager, Risk Management dated January 6, 2012. Therein, Mr. Burris states that he reviewed the photos in question, and they were found to be in violation of K.A.R. 44-12-313 on 12/16/11.  He stated, "There were several photos that violated the rules about exposed buttock and female breast below the top of the areola," and that the "poses of the women and depiction of the photos were clearly intended for sexual arousal or justification."

Plaintiff seeks punitive damages and reimbursement for all documents that "this facility has destroyed."  In addition, he seeks injunctive relief in the form of removal of defendants Arnett and Reynolds from the decision-making process as to incoming publications, the retraining of "all mail room personnel," and a "formal apology."

**SCREENING**

5

Because Mr. Meredith is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

**PERSONAL PARTICIPATION OF SUPERVISORY DEFENDANTS NOT SHOWN**

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"). A supervisor's liability may not be predicated solely upon a theory of respondeat superior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Gagan v. Norton, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), cert. denied, 513 U.S. 1183 (1995).  "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008).  As the U.S. Supreme Court recently explained in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009):

6

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. (Citations omitted). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Id. It is settled that denial of an administrative grievance does not constitute "personal participation" in the denial of the constitutional right, which occurred prior to the filing of the grievance. Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)("denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.")); Adams v. Wiley, 398 Fed.Appx. 372 (10th Cir. 2010)(unpublished).[1]  "A plaintiff cannot establish liability under § 1983 merely by 'show[ing] the defendant was in charge of other state actors who actually committed the [constitutional] violation. Instead, . . . the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights.'" Martinez v. Decesaro, 427 Fed.Appx. 660, 663 (10th Cir. 2011)(unpublished)(citing Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010)(quoting Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006)).

Plaintiff's allegations plainly indicate that the act of which he complains, the censorship of his incoming publications on November 28, 2011, was committed by defendant Sgt. Arnett. His allegations regarding the remaining defendants are insufficient to hold them liable for this act of mail censorship. Plaintiff will be

---

[1] Unpublished opinions are not cited herein as binding precedent, but for persuasive value. See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

given the opportunity to file an Amended Complaint in which he must either name only the defendant or defendants that personally participated in the censorship incident, or allege additional facts showing the direct personal participation of all named defendants.

**FAILURE TO STATE A CONSTITUTIONAL VIOLATION**

Plaintiff's assertion of a violation of rights under the Eighth Amendment is not supported by any factual allegations, and is therefore subject to being dismissed for failure to state a claim. Generally, the Eighth Amendment "deliberate indifference" standard is applicable to claims of denial of medical attention or excessive force and other subjection to risk of harm.

Plaintiff's claims are analyzed only as violations of his right to receive information under the First Amendment and an illegal seizure under the Fourth Amendment.

K.A.R. 44-12-601 governs mail procedures in KDOC institutions and pertinently provides at (d)(Censorship grounds and procedures):

> (1) Incoming or outgoing mail, other than legal, official, or privileged mail, may be censored only when there is reasonable belief in any of the following:
>
> * * *
>
>  (E) The mail contains sexually explicit material, as defined and proscribed by K.A.R. 44-12-313.
>
> (2) If any communication to or from an inmate is censored, all of the following requirements shall be met:
>
>  (A) Each inmate shall be given a written notice of the censorship and the reason for the censorship, without disclosing the censored material.
>
>  (B) Each inmate shall be given the name and address of the sender of incoming mail, if known, or the addressee of outgoing mail and

8

>     the date the item was received in the mail
>     room.  Notice  of  the  censorship  of
>     correspondence by the facility shall be
>     provided to the sender, if known, by staff in
>     the facility's mail room within three business
>     days of the decision to censor.
>
>     (C) The author or addressee of the censored
>     correspondence shall have 15 business days from
>     the date of the notice of censorship to protest
>     that decision.
>
>     (D) All protests shall be forwarded to the
>     secretary of corrections or the secretary's
>     designee for final review and disposition.
>
>     (E) Each inmate shall have the option of having
>     censored correspondence or other materials in
>     their entirety either mailed out at the expense
>     of the inmate or discarded.

Id.  K.A.R. 44-12-313 provides in pertinent part:

>     Sexually explicit materials.
>
>     (a) No inmate shall have in possession or under control
>     any sexually explicit materials, including drawings,
>     paintings, writing, pictures, items, and devices.
>
>     (b) The material shall be considered sexually explicit if
>     the purpose of the material is sexual arousal or
>     gratification and the material meets either of the
>     following conditions:
>
>         (1) Contains nudity, which shall be defined as
>         the depiction or display of any state of
>         undress in which the human genitals, pubic
>         region, buttock, or female breast at a point
>         below the top of the aerola is less than
>         completely and opaquely covered . . . .

Id.

Plaintiff does not state a federal constitutional violation by alleging that his materials were withheld as sexually explicit and he was forced to dispose of magazine materials to which he subscribed, without more.  As the Tenth Circuit has noted:

>     [S]uch restrictions are sufficiently commonplace in the
>     prison setting, see, e.g., Thornburgh, 490 U.S. at 415-19,
>     109 S.Ct. 1874 (upholding restrictions on prisoners'
>     incoming mail); Smith, 899 F.2d at 944 (complaint about

9

> undelivered catalogues did not raise a constitutional issue), that his claim is not plausible absent allegations showing that the restrictions were imposed in violation of prison regulations or that the regulations invoked were unconstitutional in the circumstances.

Gee v. Pacheco, 627 F.3d 1178, 1190 (10th Cir. 2010).

Plaintiff does not specifically allege that he was denied procedural due process as to his censored mail. Nor does it appear that he could, since his own exhibits show that he received written notice with a statement of reason and was given the opportunity to protest the censorship. They also indicate that the censorship was reviewed by someone other than the person who originally disapproved the incoming mail. His allegations regarding the time frame of the decision at the SOC level do not establish a due process violation, particularly in light of the exhibit he provides as a supplement, which indicates that the SOC delegate had reviewed the censorship of the pictures.

Nor does plaintiff expressly challenge the KDOC's mail censorship regulation. In any event, this regulation was previously reviewed thoroughly and upheld against constitutional challenge. The Tenth Circuit reviewed claims similar to plaintiff's in Strope v. Collins, 315 Fed.Appx. 57, 59 (10th Cir. 2009)(unpublished). Their discussion is instructive:

> Kansas Administrative Regulation 44-12-313 provides that no inmate within KDOC custody shall possess any "sexually explicit materials," which is defined in part as any picture "contain[ing] nudity," if its purpose is "sexual arousal or gratification." R. Doc. 19-6 at 1. As relevant to this appeal, the regulation defines nudity as "the depiction or display of any state of undress in which the human . . . buttock . . . is less than completely and opaquely covered." Id. Enforcing this regulation, defendants, all KDOC employees, withheld from Strope various magazines to which he subscribed because they contained images of scantily clad women revealing their partially bare buttocks. In May 2006, Strope filed this

      action under 42 U.S.C. § 1983, alleging violations of his First Amendment right to receive information while in prison. He claimed the regulation's definition of nudity was overly broad and that the regulation itself was invalid because it served no valid penological purpose.

<u>Id.</u> The Tenth Circuit found as follows:

      The district court (found) the record insufficiently developed on the issue of whether the challenged regulation served a legitimate penological interest under Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).[2] Responding to the court's concerns, the defendants submitted a second motion for summary judgment on March 10, 2008, this time attaching an affidavit from Roger Werholtz, Secretary of KDOC, who promulgated the challenged regulation. Werholtz testified that "depictions of nudity in any form generally tend to disrupt the overall security of a correctional facility." R. Doc. 100-2 at 2. He specified such depictions can be used to harass staff members and he noted male inmates, in particular, who receive pictures of bare male buttocks are at risk of violent homophobic attacks. Finally, Werholtz claimed the regulation was a necessary tool in managing and treating the sex offender inmate population.

      \* \* \*

      On June 12, 2008, 2008 WL 2435560, the district court issued an order granting the defendants' second motion for summary judgment and dismissing the case. The court acknowledged Strope's First Amendment right to receive information while in prison, but explained that he, as the plaintiff, bore the burden of disproving the validity of the regulation infringing that right. After carefully considering the record in light of Turner, it concluded he had failed to do so. Most importantly, for purposes of this appeal, the district court refused to invalidate the

---

      [2]      The Tenth Circuit Court of Appeals instructed that:

In <u>Turner</u>, the Supreme Court held "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89, 107 S.Ct. 2254. It instructed lower courts to consider the following factors in determining the validity of a challenged regulation: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," id. (quotation omitted); (2) "whether there are alternative means of exercising the right that remain open to prison inmates," id. at 90, 107 S.Ct. 2254; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and the allocation of prison resources generally," id.; and (4) whether there are ready alternatives to the challenged regulation.

<u>Id.</u> fn. 3.

11

> regulation simply because its definition of nudity banned a broader range of materials than censorship regulations at other facilities. And it concluded Strope failed to identify any obvious, easy alternatives that would accommodate his First Amendment rights at a de minimis cost to the prison's legitimate interest in institutional security. Here Strope argues primarily that the regulation is unreasonable and its definition of nudity an exaggerated response to prison concerns.

Id. at 59-60. The KDOC regulation limiting sexually explicit material was recently again upheld and found not to violate a prisoner inmate's First Amendment right to receive information in Sperry v. Werholtz, 413 Fed.Appx. 31 (10th Cir. 2011). In Sperry, the Tenth Circuit ruled that this regulation prohibiting KDOC inmates from possessing "sexually explicit material" was "reasonably related to legitimate penological interests," and therefore, did not violate the plaintiff's First Amendment right to receive information while in prison, as such material tended to disrupt security at correctional facilities, resulted in complaints from KDOC employees having to review such material and increased potential for lawsuits from such employees, promoted paraphilias and sexual deviance, and increased the resources KDOC had to spend reviewing and censoring. Id. at 32. The court reasoned that the statement by defendant Roger Werholtz, SOC, who had promulgated an amendment to this regulation, was based on his many years of experience in corrections administration and established that the regulation was reasonably related to legitimate penological interests. Id. at 33. The regulation was thoroughly analyzed under all the Turner factors and upheld. Sperry, 413 Fed.Appx. At 40-42.

Mr. Meredith's claim in this case amounts to one that the censored materials were not "sexually explicit" as that term is defined in the regulation. In other words, he mainly claiming that

12

the administrative decision to censor the materials was arbitrary and capricious. See Elliott v. Cummings, 49 Fed.Appx. 220, 221 (10th Cir. 2002)(unpublished)("As we understand his complaint, plaintiff is not challenging the prison officials' authority to censor and exclude obscene materials from the prison," but instead alleges "that defendants have acted in an arbitrary and capricious manner in censoring non-obscene publications" that were mailed to him.).

In support of this claim, Mr. Meredith alleges first that he received similar materials for four previous years that were not censored as "sexually explicit." Second, he attaches materials, which he apparently claims are similar to those that were censored and contends that they are not "sexually explicit."[3] The fact that Mr. Meredith previously received similar materials that were not censored does not establish that the materials he received on November 28, 2011, were not "sexually explicit." Furthermore, having viewed plaintiff's exhibits of allegedly comparable pictures,[4] the court cannot say that a decision finding some of those pictures containing partially bare buttocks to be "sexually explicit" under the regulation was arbitrary and capricious. In

---

[3] Plaintiff baldly alleges that defendant Arnett did not follow censorship procedures in that Arnett censored more materials that originally intended because he was angry at plaintiff for saying he was going to file a grievance. However, Mr. Meredith does not describe what materials he would have received that were withheld solely due to Arnett's anger. Nor does it appear that he raised this claim in his administrative grievances. When it appears from the face of a plaintiff's materials that he has not exhausted administrative remedies on a claim, the court may sua sponte question his failure to exhaust. Here, the court finds that plaintiff has not alleged sufficient facts to present the claim that Arnett censored materials that would not have been censored, "but for" Arnett's improper motive. If plaintiff intends to challenge the censorship decision based upon a claim of retaliation, then in his Amended Complaint he must allege specific facts showing that the materials would not have been censored "but for" the improper motive of defendant Arnett.

[4] Generally, evidence of a plaintiff's claim is not proffered until trial or in response to a summary judgment motion, but the court is not prevented from considering the evidence that is prematurely presented by plaintiff.

Elliott, the Tenth Circuit upheld the district court's "sua sponte dismissal" of a similar claim regarding magazine pictures under § 1915(e)(2)(B):

> the district court entered a sua sponte order dismissing plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B). (Section 1915 applied to the district court proceedings because the court granted plaintiff's motion for leave to proceed in forma pauperis.) . . . [U]nder § 1915(e)(2)(B)(i), the court found that plaintiff's First Amendment claims were frivolous. The court based its frivolousness determination on its review of the documents attached to plaintiff's complaint. According to the court, "[t]he grievance responses show adequate and reasonable bases for the decision to censor the materials in question under the standards set out in [Kan. Admin. Regs.] 44-12-313, and the complaint and attachments provide no support for arbitrary and capricious rule-making."

Eliott, 49 Fed.Appx. At 223.

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). Put another way, there must be "enough facts to state a claim to relief that is plausible on its face." Id. at 570. The court accepts all well-pleaded allegations in the complaint as true and considers them in the light most favorable to the nonmovant. Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006). However, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. Twombly, 550 U.S. at 558. The complaint must offer

14

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 555.

The court finds that plaintiff does not allege sufficient facts to show that his constitutional rights were violated by the censorship in question, and that his own exhibits indicate that his claim is subject to dismissal as frivolous.

Plaintiff's claims for injunctive relief including requests for personnel action at the prison, are not supported by his factual allegations, and in any event are not appropriate requests for court order.

**OTHER MOTIONS**

The court has considered plaintiff's Motion for Appointment of Counsel (Doc. 3), and finds it should be denied. There is no constitutional right to appointment of counsel in a civil case. Durre v. Dempsey, 869 F.2d 543, 547 (10th Cir. 1989); Carper v. Deland, 54 F.3d 613, 616 (10th Cir. 1995). Instead, the decision as to provision of counsel lies in the discretion of the district court. Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." Steffey v. Orman, 461 F.3d 1218, 1223 (10th Cir. 2006), *citing* Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir.2004). It is not enough "that having counsel appointed would [assist the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." Steffey, 461 F.3d at 1223, *citing* Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995). In deciding whether to appoint counsel, the district court

15

should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." Rucks, 57 F.3d at 979; Hill, 393 F.3d at 1115.  Having, considered these factors, the court concludes in this case that (1) it is not clear at this juncture that plaintiff has asserted a colorable claim; (2) the issues are not complex; and (3) plaintiff appears capable of adequately presenting facts and arguments.  Thus, the Court denies plaintiff's motion for appointed counsel, without prejudice.

Plaintiff has filed a Motion for Leave to Amend Complaint (Doc. 5).  Even though he cites Fed.R.Civ.P. Rule 15, he does not follow its dictates.  A plaintiff may amend his complaint once as a matter of right.  It follows that plaintiff did not need to file a motion for leave to amend.  However, he did need to file a complete Amended Complaint.  See Fed.R.Civ.P. Rule 15.  An Amended Complaint completely supercedes the original complaint, and therefore must contain all claims and name all parties that the plaintiff intends to pursue in the action, including those raised in the original complaint.  Any claims not included in the Amended Complaint shall not be considered.  Plaintiff may not add either defendants or claims to his original complaint by simply referring to them in a motion for leave to amend.

Nevertheless, the court grants plaintiff's motion for leave to amend his complaint, for the reasons that he is being required to file a complete Amended Complaint upon court-provided forms.  In his Amended Complaint, Mr. Meredith must cure the deficiencies discussed herein. He must write the case number of this action and the word "Amended" on the first page of his new complaint.  He may not simply

16

refer to his original complaint, but must fully complete and answer all questions on the form complaint. If Mr. Meredith fails to file a complete Amended Complaint that cures the deficiencies found in his original complaint within the time allotted, this action may be dismissed without further notice.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 3.00. Any objection to this order must be filed on or before the date payment is due.

**IT IS FURTHER ORDERED** that within the same thirty-day period plaintiff is required to file a complete Amended Complaint upon court-provided forms that cures the deficiencies discussed herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Appointment of Counsel (Doc. 3) is denied, without prejudice; and his Motion for Leave to Amend (Doc. 5) is granted to the extent discussed herein.

The clerk is directed to send plaintiff § 1983 forms.

**IT IS SO ORDERED.**

Dated this 20th day of April, 2012, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge